All righty, the next case is Hawthrone v. Johnathan Hawthrone. Before we start, if I could just ask Mr. Gray, the record has your client's name as Hawthrone and Hawthorne. Do you know which one is correct? Excuse my voice, I'm trying out for the Godfather IV after this and I have to stay in character. Hawthrone is actually his name. Hawthrone is the misspelling that apparently the marshal service with the Dade County Jail. Thank you for clearing that up. I'm sorry I didn't clear it up clearly, but I did the best I could. I'm sorry, I missed the, I couldn't tell the difference in pronunciation. Could you spell that correct name for us? Hawthorne, as in the author Nathaniel Hawthorne. I can't say it either. Your Honor, I'm Chief, it's Hawthorne, H-A-W-T-H-O-R-N-E. I got it. Thank you. I apologize. No problem. Okay, whenever you're ready, counsel. Good morning, I'm Jason Gray on behalf of Mr. Hawthorne and I'm along with a lot of Kukiela, my right hand and associate. Mr. Gray, I realize that you're worse and I'm sorry for that, but great if you could keep that microphone right up there just so we can make sure that we can hear. Yes, Your Honor, thank you. I want to start by saying that it is our position that the district court judge abused discretion by failing to grant a continuance in this matter and this case did not follow anywhere near the normal trajectory of cases in the district court. In this case, Mr. Hawthorne at the time I was appointed and took over the public defender's office was in competency proceedings and in custody he was being evaluated. This went on for almost a year and by the time I was able to get to Mr. Hawthorne, or the defendant, let us say, it's easier for me and I hope it's easier for the court, and he was declared competent at a hearing. Within four weeks of that, we had a plea worked out negotiated. In that plea, the government agreed that Mr. Hawthorne, the defendant, was not an armed career criminal and it was written in the plea agreement. It was one of the factors. There were no priors to support that. We took the plea. PSI came out. The PSI said he was not sentencible under the ACC and his guidelines were relatively low compared to what they ended up being and everything was good until a day before sentencing when the PSI was changed by the Department of Probation who said they found convictions under a different name or different names and perhaps the spelling problem we have here explains some of it and they went ahead and changed the PSI. I moved to withdraw the defendant's plea and Judge Ungaro, and she stated on the record, for the first time ever in her career allowed a defendant to withdraw a plea and she put us in a trial posture four weeks later. Now of course since we had a plea and we were waiting for sentencing, I hadn't continued at CJA rates to do discovery and to march forward preparing for trial which was not going to happen. So I asked for continuance because there was DNA evidence that had not been tested in the hands of the government. The government chose not to test it although they had it and had taken it from the state who originated this case. I wanted it tested. I wanted to test it myself because it was going to either, it's Brady, I mean there's DNA from a gun and the weapon was supposedly the weapon the defendant possessed in this case and yet I could not get the judge to give me a continuance because the judge felt that it was not I guess important to test the DNA on the gun. The government simply chose not to and the court said it wasn't Brady because it wasn't tested and our position is Brady either way because if it was about a woman whose finger was shot off and got nerve damage, about using a child as a human shield, and about all these events that the judge let in only because she said there was no DNA and no better way for the government to prove it wouldn't have come in. If the DNA had not been the defendant's then the weapon that everybody claimed he possessed which is the subject of this case, that would have been a lot weaker if his DNA had not been on the gun that the witnesses said he possessed. But counsel let me ask you this, there were three eyewitnesses of startled utterance probably admissible as such in the 911 call or at least contemporaneous and then in addition to that there was a rifle that was never recovered. It's hard to see how the fact that someone else sometime may have touched the gun and that his DNA may not have been on there, the firearm, would really have done your client all that much good. Well whether there was a rifle or not is based on the testimony of witnesses who related very close to each other in a neighborhood where there are some interesting ties and I would guess you could say like the Hatfields and the McCoys almost there are differences but it would have helped either way because if it wasn't on this weapon and the only one they had that they claimed he possessed they would have had to mostly perhaps rely on the rifle they never found and the rifle they never found is supposed to be an AK-47 that the defendant pulled from his waistband which brings us to my other. Is it your possession, is it your position that anytime a firearm is recovered from a crime and the defendant pleads generally not guilty and their eyewitnesses maybe a video showing a partial image of the defendant and whatnot the defendant has a constitutional right to have tested the firearm just to see if his DNA is on it? No sir but I believe that if the government doesn't test it the defendant should have the right to have access to that and sufficient time in order to test it. We see everyday cases where murder convictions where people have been on death row for 20 or 30 years reversed on DNA. Yeah but it's I've never heard of one that was reversed because they ran a DNA test on the defendant's DNA was not on the murder weapon. The DNA reversals are generally from body fluids or DNA left at the crime scene that there's no explanation for and that sort of thing. Yes sir but in this case whether the defendant's DNA was on the gun again helps both ways because that was the door by which the judge allowed so much other evidence which was the judge said it was inextricably intertwined but it kind of came more as 404b and so that evidence itself was so prejudicial that came in but for the DNA that it seems like you know there was no fair opportunity to have a trial and without being able to test that DNA in this case I feel that I was not able to proceed as counsel and I was more of a mere formality than an attorney in that regard. Help me with this my records show the government disclosed in discovery on October 21, 2015 that there were DNA swabs so we're not dealing with a failure to disclose is that correct? That is correct. All right so your theory is the defense has no duty to test until I learned the government hasn't tested it seems like you had 10 months to test it if you wanted to test it. Well you could have asked for testing right? I could have except. Okay and you did not ask for testing? Not until the case was in a trial posture. Right so here's my problem maybe you are relying on the government to test it but they never gave you a test report right? That is correct. So you pretty much knew they hadn't tested it? I did not exactly know because. Right but you could have asked and said once your client withdrew the guilty plea why can't you just get a DNA test or while he's thinking about doing it? Well there was no thought in other words this came up the day before sentencing. We filed a motion to withdraw a guilty plea as Judge Ngaro said she had never in her career. But she granted it so we're not here. She did it first time ever. I could not have anticipated. That even cuts against you because you know she's probably not likely to allow it. I mean I don't know it just you could have had tested you could have made a motion to the court I want DNA testing right? I did and she denied it. No but that was during the trial for a continuance. Yes well you understand your honor that he had pled guilty there was six months that went by with the PSIs being done and then revised several months and so once he pled guilty why would I have asked to test DNA? Well actually the question probably should be why would he plead guilty if there was a possibility that the DNA on the gun was not his but someone else's? Well because he believed that the plea was in his best interest based on the guidelines. But it would only be in his best interest if he didn't have a defense as you pointed out somewhere during all these discussions at the trial level or maybe it's in your briefing it runs together but you pointed out that if the DNA test came back that it was his DNA that would be very difficult for your client. It might have made it easier quite frankly because of the government's use of the 404b inextricably intertwined evidence which made so much wait wait wait the fact that your client and only your client handled the fact that your client who's a felon can be conclusively proved to have handled the firearm uh because his DNA is on it would have made it better for your client? In some ways in trial yes. I'm sorry I just don't follow. He was only charged with possession of a firearm by a guilty of a convicted felon. That's what he was charged with but that's not what it seemed like in the trial. But if his DNA came back on the firearm that was found not the firearm that was allegedly shot yes found what we're trying to say is that would have been devastating if his DNA is on that because that's maybe you didn't want that to come back. Well it would have made it certainly more difficult I mean one could always attack DNA as a defense lawyer and I have. Okay I want to make sure I understand the closing argument I do think you stressed during closing the government had failed to show his DNA on the weapon they had you put it on them and you made that argument to the jury is that correct? Yes. Okay not once but several times no casings were found and no DNA on the that was part of your argument in closing. Yes your honor. Thank you counsel. You've reserved five minutes for rebuttal. Good morning Mr. Matzkin. Good morning your honors may I proceed? You may um I understand you'd like me to let you know when the yellow light comes on is that correct? That would be very much appreciated your honor. Not a problem. Thank you your honors may please the court Dan Matzkin on behalf of the United States with me at council table is Joseph Schuster one of the AUSAs who tried the case in district court. Overwhelming evidence including the unrefuted testimony of three eyewitnesses demonstrates Mr. Hawthorne's guilt here your honor should affirm his conviction and sentence. With respect to the continuance issue in addition to the questions that the chief judge posed about the utility of the DNA evidence in any event I think the chronology here really tells the story. The chronology begins as Judge Hall pointed out at the end of 2015 when the government produced to the defense a report indicating that DNA swabs had been taken. We then moved to February of 2016 in February 20 on February 25th the magistrate judge found Mr. Hawthorne competent to proceed with trial and on March 18 2016 Mr. the district court rather scheduled Mr. Hawthorne's change of plea. So Mr. Hawthorne in that span of time 22 days did nothing to test the DNA even though the government had made that report available to him the previous year and in fact the government had represented on the record that it made the DNA available to him as well. Following that Mr. Hawthorne's guilty plea was withdrawn as he pointed out. He then had 33 days between the district court's withdrawal of his guilty plea and the start of trial to test the DNA and again nothing happened. So Mr. Hawthorne had everything he needed and all time he needed to conduct any test he saw fit and he decided not to do so. Counsel all the time he needed my information and impression may be dated but I thought it took longer than that to get DNA tests back. The I mean we don't know that from the record but I mean certainly the defendant would have been in a much stronger position to move for continuance had he actually sought to have the DNA tested to begin with. Yes I thought that was your better argument. I couldn't tell whether you were making it or not. Right exactly and in fact on I believe it was August 1st 2016 the defendant filed an initial motion for continuance where he didn't even mention the need for discovery or the need for DNA testing. It was only on a second motion to continuance filed on August 11th that he did so. Did he have appointed counsel at trial? He did your honor. Okay so there may have been a question about whether he could he could afford to have the DNA swabs tested right? I if there was such a question I don't believe that issue was raised below or it was brought to district court's attention. But I mean I don't want to put words in the chief's mouth but I guess when we're when we have CJA counsel we want to make sure that the expenditures are appropriate expenditures. Right. So if you know I guess if you know that you're not going to get the results back in time to use at the trial it might be hard to convince the judge to sign off on the CJA voucher. Right but having said that the motion was the motion for continuance relevant to the DNA was only filed roughly two weeks before trial. I mean as the chief judge pointed out earlier or actually maybe it was Judge Hull pointed it out earlier surely the defendant would have had every incentive to have sought the DNA before he decided to enter into a guilty plea. The fact that he declined to do so or failed to do so is very revealing. And of course none of it matters if it turns out that the results of the DNA not having the results of the DNA would have been harmless anyway. Right that's exactly right your honor. I haven't read all the closing but my impression from the briefs was that he argued about it at length in closing and the government didn't try to suggest well it could have been on there. I haven't read the whole thing do you know? That's right that's absolutely right I mean you know the government never claimed that there was any DNA evidence and in fact you know arguably the decision not to test the DNA placed Mr. Hawthorne in an even stronger position than he because as it stands Mr. Hawthorne was able to point out that no DNA was tested and also to make the implication that surely if his DNA were on the gun it would have been tested. So in addition to you know making the point that a you know that would have been made from a negative test result he was also able to make the government look like it was hiding something from the jury which places defense in an even stronger position than it otherwise would have been. Well that assumes that the result of the test would have been that his DNA was on the gun. I mean if the test had shown that somebody else's DNA was on the gun and not his he would have been in a stronger position than if it hadn't been tested. Well that's certainly true but you know but in most of these cases where DNA is tested the results come out inconclusive anyway as they with fingerprints here. Well there's no nothing in the record about that I've seen. Right there's nothing I mean we know that from the record here that the fingerprint testing did come out inconclusive. But which is almost well I'm off the record now but that I mean outside the record but that's almost always the test with firearms. Correct that's exactly right your honor. For whatever reason. Right. So the district court acted well within its broad discretion in denying in denying a continuance based on the desire to test for DNA. With that I've addressed I believe the all the arguments that Mr. Hawthorne has raised this morning. If your honors have no further questions we would ask that you affirm the district court. Thank you counsel. Thank you your honor. Good morning again. I started to speak a little bit about the judges refusing to allow me to call an expert witness and I was pulled aside. I'd like to speak just on that for a moment before I get. I'm I have some questions about whether you're allowed to do that. Generally you can't bring up a new issue a new in the sense you didn't talk about it in your opening argument. Because that deprives the appellee of an opportunity to respond to it but I'll leave that up to Judge Rosenbaum and Judge Hull as to whether to allow that or not. Yes your honor. I had attempted to do so but I was pulled aside by questions but at the court's discretion. I'll tell you what we'll let you do it and if Mr. Matzkin wants to respond we'll give him an opportunity to respond as well. Just very briefly I had attempted to call a witness and function and characteristics of the one of the weapons at issue an AK-47 rifle. It was the witnesses and the eyewitnesses credibility was an issue because they claimed without ever noticing it that not only Mr. Harthon had a pistol in his hand which was recovered and subject to the charge but he managed to pull an AK-47 rifle out of his waistband as if it was a special. This is pretty much impossible. Let me ask you this counsel. I'm not sure we get to the discretion exercise there on whether you should be allowed to call the expert or not. I'm not sure we get past the rule 16b1c requirement that your motion set out not only the I didn't see that in anything you gave the district court judge. As I said in my notice and in a lot of argument he was not going to formulate an opinion only that he was an expert on firearms and I don't think anybody would question that and testify as to the weight of the gun the size of the firearm how it functions so that that doesn't that size and expert testimony it's not a proper basis for expert testimony. You could have gotten anyone to testify how much AK weighed and how big it was you could have brought one into the courtroom. The judge wouldn't allow that bringing one into the firearm but a firearm into the courtroom but that was why I listed the witness so that that witness who had more information than the way people on the jury could explain to them how big this thing was and how it worked because therefore the witness's testimony seems far less credible. But that's not that's not what you said in the motion. You didn't say this is his opinion that he's going to testify to and this is the basis for it and if he wasn't going to testify as to an opinion I'm not sure that qualifies as expert testimony. Well the I was not going to testify to the opinion I stated that in my proffer I was going to use as argument that the size and weight of an AK-47 and how it functions belays the testimony of the eyewitnesses and makes what they're saying very improbable if not impossible. When I read your motion and I'm looking at it he will testify about the characteristics of a weapon in question including its form function and tendencies. That doesn't sound like the size and weight of it. It's form how it's size and weight it's function. No it doesn't say size and weight but there's form function and tendencies. I'm reading that as a district court judge I have no idea what his testimony is going to be. Form is size and weight and when the district court questioned me on it it was a very very thorough and detailed explanation by me myself of what that meant that the form is its size and weight that its function is as a semi-automatic or automatic weapon it fires projectiles and expels casings and so by doing so they should have found casings at the scene which they did not claiming it was fired. They should have found that it was impossible to have that in the waistband of your shorts and just pull it out after running up and down stairs. Did you ask the judge whether you could in fact bring one in that wasn't loaded and that the Marshall certified wasn't loaded and did you ask the judge if he could bring in a photograph or specifications of the dimensions? I believe I did but since the and I could not specify which exact configuration it was other than by the account of witnesses that it was a rifle known as a chopper or AK-47. So the witnesses said a chopper is an AK-47? Oh yes sir. Any further questions? Not from me. All right thank you Mr. Gray. Thank you. Mr. Maskin would you like to respond? Sure we'll give you you can have up to five minutes which is the amount of time that Mr. Gray had. Thank you your honors. The expert disclosure in this case was insufficient and extremely vague on its face. All it said was that the proposed expert was going to testify as to the characteristics of semi-automatic weapons. The next thing we heard was that the expert was going to testify as to the probability that somebody could fit a semi-automatic weapon in his pants. Then the next thing we heard after that at trial was that the expert was supposed to testify as to whether bullets could fall out of a clip that was dropped on the ground. So it almost seemed as if every single time this issue came up the nature of the proposed testimony changed and at no point as the chief judge pointed out at no point were the bases or reasons for the proposed experts opinions ever disclosed. So the government had no way of as a district court put it the government would have had to be clairvoyant to figure out what exactly the defendant planned on putting on. If there are no further questions. Thank you Mr. Maskin. Thank you. And thank you Mr. Gray. We that you were CJA appointed and we appreciate your taking the appointment.